Filed: 12/3/2025 10:47 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 108655455
By: Marissa Medina
12/3/2025 2:44 PM

CAUSE NO. _25-CV-2242_____

| | | |
|---|---|---|
| **FALSTAFF PARKING PARTNERS, LLC** | § | **IN THE DISTRICT COURT** |
| *Plaintiff*, | § | Galveston County - 122nd District Court |
| | § | |
| **v.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **THE TRAVELERS INDEMNITY COMPANY** | § | |
| *Defendant.* | § | **GALVESTON COUNTY, TEXAS** |

### PLAINTIFF'S ORIGINAL PETITION

NOW come FALSTAFF PARKING PARTNERS, LLC ("Plaintiff"), who files Plaintiff's Original Petition against THE TRAVELERS INDEMNITY COMPANY ("Defendant") and in support thereof, would show as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

1) Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II.
### PARTIES & SERVICE

2) The Plaintiff has a policy with Defendant bearing policy number YK630-6K82409A ("Policy"). Plaintiff is the named insured under the policy issued by the Defendant, The Travelers Indemnity Company. The policy insures 3402 Church St., Galveston, Texas 77550 ("Property").

3) Defendant, The Travelers Indemnity Company is an insurance company that engages in the business of insurance in Texas. The insurance business done by Defendant includes, but is not limited to, the following: taking and receiving applications for insurance; receiving and

1

EXHIBIT B

Status Conference 02/26/2026

collecting premiums; adjusting claims and sometimes paying claims, and issuing insurance policies to consumers of this state, including Plaintiff.

4)      Defendant, The Travelers Indemnity Company may be served through its registered agent, Corporation Service Company, 211 East 7th Street, Ste 620, Austin, Texas 78701 or wherever else it may be found.

## III.
### JURISDICTION & VENUE

5)      This is a civil matter in which the amount in controversy is more than five hundred dollars ($500.00), exclusive of interest.  Jurisdiction is thus proper in a District Court of Galveston County, Texas, and it is also proper pursuant to Art. V, Sec. 8 of the Texas Constitution.

6)      Venue is appropriate in Galveston County, Texas because all or part of the conduct giving rise to the causes of action were committed in Galveston County, Texas and the property which is the subject of this suit is located in Galveston County, Texas.  Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## IV.
### FACTS

7)      Plaintiff has a policy with Defendant bearing policy number YK630-6K82409A. The policy insures Plaintiff's building located at 3402 Church St., Galveston, Texas 7550.  The property is a parking garage that serves the Galveston cruise industry and its patrons. The Policy has $5,510,295.00 limit for the "Building," and a $255,000.00 for "Business Income."  The entirety of the building is covered at a replacement cost value except for the roof, which is covered at an actual cash value. The policy also has a 5% windstorm deductible for covered damage to the building ($275,514.75), subject to a $250,000.00 minimum, and a 168-hour deductible for "Business Income Coverage."  The policy period began on April 10, 2023, and continues through

2

April 10, 2024.  In total, Plaintiff paid $59,807.00 in premiums for this and other coverage in that policy year. Defendant agreed to renew and has covered this building every year, from 2016 through 2024, terminating coverage shortly after Plaintiff filed this claim.

8)    The policy is a contract between Defendant and Plaintiff, which states: "In return for payment of the premium, [Travelers] agree[s] with [FPP] to provide insurance afforded by this policy." The "insurance afforded" by the Travelers' policy is an all-peril policy that covers all "direct physical loss" unless the loss is limited or excluded.  Wind damage and wind-borne debris certainly qualify as "direct physical loss," and neither are excluded or limited by the Policy. They are therefore covered losses.

9)    During the 2023-2024 policy period and all prior policy periods, Plaintiff had fully paid its premiums, thus making the policies in effect and indicating that Plaintiff was in complete compliance with the terms of the Policy.  This is important because during the policy period a wind event occurred causing damage to Plaintiff's Property.  More specifically, Plaintiff's facility manager arrived at work one day and found debris and signs of damage everywhere. Parking cones had blown over, trash was strewn about, and more importantly large chunks of the concrete roofing/substrate had fallen into the parking spots below. These are the very same parking spots that Plaintiff's patrons utilize during their cruise.

10)    Plaintiff then hired Patriot Claims to serve as their public adjuster. Mr. Ted Francis of Patriot Claims visited the Property and conducted a lengthy inspection. Unsurprisingly, Mr. Francis found strikes, impacts, scrapes, gouges, and drag marks across the silicon roofing consistent with wind forces. He also found that the spray foam parapet walls had impacts and punctures that were likewise caused by wind. His findings were only buttressed by the amount of wind-borne debris collecting in negative wind-areas, and despite there being no glass on this

3

portion of the property, there were broken panes photographed and documented all over the roof. Even more, bricks from other properties were found on the roof, and ultimately it was clear that construction debris from a neighboring property had also become windborne and damaged the building. In other roofing areas, the modified bitumen roof also had debris impacts, tears, gouges, and termination bars were ripped back.

11)    A claim for wind damage was promptly reported in December of 2023. Mr. Troy Tindall was assigned to the claim, and he attended the first inspection.  After conducting a cursory inspection and nonchalantly dismissing obvious signs of wind-borne debris, Defendant did what has become all too commonplace in the insurance industry. Defendant hired one of the go-to engineers that insurance companies (and only insurance companies) routinely hire: Nelson Forensics.

12)    While Nelson could not wholesale dismiss the mounting evidence of wind damage, Nelson still did not disappoint. Nelson generally admitted that various termination bars were displaced by wind, shingles and other debris embedded and gouged the various surfaces, wind-borne dents occurred to the roof-top vents, debris has scarred the skylight lenses, and other mechanical devices and items were displaced by wind. However, Nelson generally took the position that its engineers could not determine when the wind events occurred.  Mr. Tindall took this and ran with it.

13)    In a letter dated June 28, 2024, Mr. Tindall misrepresented that the damage was a fraction of the overall amount, and that it fell under the deductible. He also gave an incoherent explanation as to why coverage was being denied and accepted. In particular, he noted that his investigation was inconclusive, and that he could not rule out that a single event may have caused

some of the exhibited damage. According to him, this was "especially true with regards to the damages in Section 6…." Below is a diagram of the roofing structures provided by Nelson:



14)    In Section 6, Defendant described the damage as "widespread" and adjacent to a non-insured structure that was also likely damaged by wind. This is the building under construction mentioned above. Defendant made absolutely no effort to explain why any of the other roofing areas were not from a singular event, or how the engineer's findings of damage to "Areas 1, 2, 6, and 7, as well as roof coatings and SPF abrasions at Areas 3 and 4" were subject to denial. Defendant also failed to explain why a denial was proper for all the other roof top attachments that suffered from wind and wind-borne debris. Altogether, the denial was inadequate and so was the investigation. It appears Defendant and the engineer finally just gave up on investigating the claim and paid an amount that conveniently fell below the deductible.

15)    Defendant's investigation failed to account for Plaintiff's almost-complete overlay of the roof in 2018 or the WPI-8-C certification Plaintiff received in the same year. It also does not account for how Defendant's own investigation found multiple compensable events during this and any prior policy periods, and yet no insurance benefits were offered for that damage. The

only conceivable explanation is that Defendant did not want to pay the money it owed, which was much more than Defendant was willing to admit.

16)    Following Mr. Francis' receipt and review of the Nelson Forensics report, but prior to Defendant's coverage decision, Mr. Francis endeavored to find a contractor to fix the covered damages that he and the engineer noted.  However, he could hardly locate a manufacturer for the pre-cast concrete panels on the roof.  Defendant was advised of this in a June 5, 2024 email, and it was specifically requested that either Mr. Tindall, Defendant, or the engineer help with finding a contractor who could complete the repairs, or find a manufacturer who could form the panels, or have the engineer certify the roof decking system, or even just opine on the thickness of the panels for reproduction. It appears Mr. Francis was trying to be reasonable and accommodate spot repairs versus a costly re-roof. He attached evidence from precast manufacturers stating that today's precast products are too heavy for similar construction. Though Mr. Francis sent various emails to this effect, he was met with silence from Defendant, Mr. Tindall, and the engineer. The only response he received was the paltry response from Mr. Tindall indicating that most of the claim was inexplicably denied and a small, but under deductible, portion was accepted.

17)    To add insult to injury, Defendant also decided to non-renew Plaintiff's policy a mere eight days following the engineer's inspection. According to non-renewal correspondence, Plaintiff's "business presents an exposure to severe losses…such that we are no longer able to develop premium commensurate with the exposure loss." Translation: we have made enough off of Plaintiff, and it is time to get out now.

18)    This sort of behavior carried on even after the claim was denied.  On September 9, 2024, another representative of Plaintiff sent photographs of falling concrete that was damaging parked cars. According to Mr. Francis and the engineer, the falling concrete is a direct result of

6

water penetrating the roof from wind damage. This notice, like those before it, went unanswered. This caused additional business interruption to Plaintiff. Plaintiff was unable to park cars in these areas, and Defendant had direct knowledge of it. So much so that Mr. Francis even sent Defendant an estimate for the business interruption, requested that Defendant review it and provide coverage, and Defendant's response was again very troubling.

19)     On September 12, 2024, Mr. Francis sent a link containing roughly 1,200 photos, an estimate of the reasonable and necessary repairs from covered damages, documents related to Plaintiff's purchase of the building and the associated 2017-2018 repairs to the roof, an engineer's WPI-8-C certification for the roof after the repairs were made, reference to satellite images confirming the repairs, notice of excessive depreciation based on the age of the roofs, and an estimate of business interruption. Implicit in this request was that a business interruption claim be processed. After a few weeks went by, Mr. Francis requested an update along with an affirmation that the documents were received. The only response Plaintiff received was that the documents had been received, and that the June 28, 2024 claim determination would be neither revisited, reviewed, nor even reconsidered. Since then, Plaintiff has notified Defendant of Section 6's complete failure, and Defendant has still yet to do anything about it or fully address the damages.

20)     Defendant owes more to Plaintiff. Defendant is duty-bound to adjust all losses with Plaintiff, do a reasonable investigation before denying the claim, and provide a reasonable policy-based explanation for the bases of their denial.  Defendant has repeatedly breached these duties, other duties, and the policy Defendant garnered over $300,000.00 in premiums from, continuing to renew year after year.

**V.**
**CAUSES OF ACTION**

7

1) All conditions precedent to this action have occurred, been fulfilled, or have otherwise been waived or discharged.

### A. Breach of Contract against Defendant

2) Defendant's conduct constitutes a breach of the insurance contract between it and Plaintiff. It is undisputed that a contract existed between Plaintiff and Defendant in the form of the Policies. It is also undisputed that Plaintiff paid premiums, substantially complied with all terms of the Policies, and held up their end of the bargain. Defendant on the other hand did not hold up its end of the bargain.

3) The Policies obligate Defendant to pay for all covered losses. When a claim was presented, Defendant failed to provide coverage thereby breaching the Policy agreements.

4) Plaintiff sustained damages as a result of Defendant's breach of the Policy. Such losses were the natural, probable, and foreseeable consequence of the Defendant's conduct. Plaintiff seeks their damages together with pre-judgment interest and reasonable and necessary attorneys' fees.

### B. Noncompliance with the Texas Insurance Code

5) As described above, Defendant's conduct and the conduct of their agents constitutes multiple violations of the Texas Insurance Code that have been legislatively determined to be Unfair Method of Competition, an Unfair Settlement Practice, and/or otherwise in violation of the Texas Insurance Code. Section 541.151 and Section 542.060 of the Texas Insurance Code makes these violations actionable.

6) Due to the relationship (and/or their engagement in the business of insurance) between Plaintiff, Defendant, and their agents (who makes Defendant's liable on a respondeat

superior and agency theory) there are numerous obligations owed to Plaintiff under the Texas Insurance Code. Chief among these duties, these persons were obligated to (in whole and in part):

1. To not misrepresent to Plaintiff material facts relating to coverage at issue (§ 541.060(a)(1)) with the inclusion of knowingly);

2. To attempt in good faith to effectuate a prompt, fair, and equitable settlement a claim in which the Defendant's liability has become reasonably clear (§ 541.060(a)(2));

3. To promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the Defendant's denial of a claim or offer of a compromise settlement of a claim (§ 541.060(a)(3));

4. To affirm or deny coverage within a reasonable amount of time, or to fail to send a reservation of rights (§ 541.060(a)(4));

5. To not refuse to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

6. To not make an untrue statement of material fact (§ 541.061(1));

7. To notify Plaintiff within 15 business days of the carrier's acceptance or rejection of the claim (§542.056(a));

8. To not delay payment of a claim after receiving all items, statements, and forms reasonably requested and required under Section 542.055 for a period of more than 60 days (§ 542.058(a)).

7)    The Defendant failed to fulfill these duties. Briefly speaking, and as supported above, a written claim was undoubtedly made under the policy, Defendant was and continue to be liable for that claim, Defendant should have provided coverage for the claim, Defendant instead wrongfully withheld policy benefits and along the way violated the Texas Insurance Code as this petition describes, and that has caused and resulted in actual damages to Plaintiff. Defendant's wrongful withholding of policy benefits was made possible by the actions and inactions of its agents, all of which were in violation of the Texas Insurance Code.

8)    Plaintiff seeks to recover actual damages, and the applicable interest under the Texas Insurance Code, together with reasonable and necessary attorney's fees. Plaintiff also seeks

9

pre-judgment interest.

## C.     *Breach Of The Duty Of Good Faith And Fair Dealing*

9)     Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing it owes to the Plaintiff.

10)     In the insurance context, a special relationship arises because of the parties' unequal bargaining power and the nature of insurance contracts, which would allow unscrupulous insurers to take advantage of their insured's misfortunes in bargaining for settlement or resolution of claims. An insurance company has exclusive control over the evaluation, processing, and denial of claims, and without this duty insurers could arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed.

11)     For these reasons, a duty exists.  Plaintiff contends Defendant breached its duty of good faith and fair dealing:

    a.  Because there was no reasonable basis for Defendant to deny the claim;

    b.  Because there was no reasonable basis for Defendant to delay the claim;

    c.  Because Defendant failed to determine whether there was any reasonable basis to deny and delay the claim;

    d.  Because Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim even though its liability was reasonably clear; and

    e.  Because Defendant refused to pay a claim without conducting a reasonable investigation of the claim.

12)     Defendant's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

13)     Defendant's breach of the duty of good faith and fair dealing has proximately

caused damages for the Plaintiff.

## VI.
### KNOWLEDGE

14)      The Defendant did each of the acts described above, "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VII.
### DAMAGES

15)      Plaintiff intends to show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff. Plaintiff contends the damages were the natural, probable, and foreseeable consequence of Defendant's breach of the policy.  Plaintiff contends that Defendant's violations of the duty of good faith and fair dealing were the proximate cause of the damages.  Lastly, Plaintiff also contends Defendant's actions and its agents' actions in violation of the Texas Insurance Code were the producing cause of its damages.  These damages are a direct result of the mishandling of Plaintiff's claim in violation of the laws set forth above.

16)      For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with reasonable and necessary attorney's fees.  In the alternative, Plaintiff is entitled to their pecuniary loss.

17)      For noncompliance with the Texas Insurance Code, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, or could be the benefits as actual damages under the Texas Insurance Code due to Defendant's statutory violation that caused Plaintiff to lose its contractual rights to benefits.  In any event, the damages should at least be Plaintiff's pecuniary loss and all court costs, and reasonable and necessary

attorney's fees. For knowing conduct of the acts described above, Plaintiff seeks three times the actual damages. Tex. Ins. Code §541.152.

18)    For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of its claim, as well as the applicable interest per annum on the amount of such claim as damages, together with reasonable and necessary attorney's fees. Tex. Ins. Code §542.060.

19)    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to exemplary damages. Defendant has actual awareness of its liability under the policy, but is choosing to ignore that liability, deny the claim, and delay the claim.  This warrants the imposition of exemplary damages.

20)    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Proper notice of the claim has been sent to the relevant parties. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the appropriate appellate bodies.

## VII.

21)    As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000.00.  A jury, however, will ultimately determine the amount of monetary relief actually awarded. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to

appear and answer herein; that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court; for costs of suit; for interest on the judgment as allowed by the applicable statute; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special against Defendant, to which Plaintiff may be justly entitled.

Respectfully submitted,

CROWELL & KUCERA, PLLC
2028 E. Ben White Blvd. Ste. 240-2015
Austin, TX 78741
Telephone:     (512) 870-7099
Facsimile:      (512) 388-9520

BY: /s/ *Brennan M. Kucera*
        BRENNAN M. KUCERA
        State Bar No. 24076491
        brennan@ck-firm.com
        BENJAMIN R. CROWELL III
        State Bar No. 24087360
        ben@ck-firm.com
**ATTORNEYS FOR PLAINTIFF**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lillian Zuniga on behalf of Benjamin Crowell
Bar No. 24087360
lillian@ck-firm.com
Envelope ID: 108655455
Filing Code Description: Original Petition - OCA (1-10 plantiffs)
Filing Description: Plaintiff's Original Petition
Status as of 12/3/2025 2:46 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lillian Zuniga | | lillian@ck-firm.com | 12/3/2025 10:47:52 AM | SENT |
| Brennan Kucera | | brennan@ck-firm.com | 12/3/2025 10:47:52 AM | SENT |
| Ben Crowell | | ckfirmbackup@gmail.com | 12/3/2025 10:47:52 AM | SENT |
| Ben Crowell | | ben@ck-firm.com | 12/3/2025 10:47:52 AM | SENT |